## THE STATE v. FRED NAVE, Appellant.

### Division Two, February 16, 1918.

1. **LARCENY: Of Cow From Range: Sufficient Evidence.** Cases involving the sufficiency of the evidence to establish the larceny of stock from the range often present questions difficult of solution; but the evidence in this case is set out in detail, and the conclusion reached that sufficient additional evidence was presented to distinguish the case from State v. Lee, 182 S. W. 972, and that the evidence is sufficient to make the question of defendant's guilt one for the jury's determination.

2. ————: **Instruction: Presumption Arising From Recent Possession.** An instruction which informs the jury of the presumption arising from the recent exclusive and unexplained possession of the stolen property, given to aid the jury in identifying the thief after they have in fact found that a theft has been committed, in a case in which defendant does not admit that he is the person who took the stolen cow from the owner's possession, is not misleading and is not error. [Distinguishing State v. Warden, 94 Mo. l. c. 651, and State v. Lee, 182 S. W. 972.]

Appeal from Taney Circuit Court.—*Hon. Fred Stewart,*
Judge.

AFFIRMED.

*D. F. McConkey* and *Moore, Barrett & Moore* for appellant.

(1) The court erred in overruling the demurrer filed at close of State's evidence, and at the close of all the evidence. All the evidence on the part of the State fails to show that this was the cow that belonged to Awbrey, the injured party. No witness identified this cow as being the property of Awbrey. And further if this was the cow, the defendant honestly accounted for his possession by telling the injured party whom he got the cow from, where the party lived, and did everything an honest man could do. State v. Bass, 251 Mo. 107; State v. Warren, 14 Mo. 83. (2) The court erred in giving instruction number 8, as the testimony doesn't

warrant the giving of an instruction on the recent possession of stolen property, nor is said instruction sufficient within itself. State v. Dashman, 153 Mo. 454; State v. Richmond, 186 Mo. 71; Bishop's Criminal Law (New's 2 Ed.), sec. 989.

*Frank W. McAllister,* Attorney-General, and *Thomas J. Cole* for the State.

(1) The court did not err in refusing to sustain the demurrer to the evidence. Where there is some evidence of defendant's guilt, a demurrer to the evidence should not be sustained. State v. Pollard, 174 Mo. 614; State v. Warner, 74 Mo. 85; State v. Stuart, 116 Mo. App. 330. (2) There was sufficient evidence in this case to identify the cow sold by defendant as Awbrey's cow. State v. Estes, 209 Mo. 288; State v. Dickson, 78 Mo. 446; Colquitt v. State, 61 Ala. 48; Turner v. State, 74 S. W. 777. (3) Instruction 8 contained all necessary elements under the facts of this case. State v. Good, 132 Mo. 125; State v. Moore, 101 Mo. 330. (4) The evidence is sufficient to sustain the verdict. State v. Underwood, 263 Mo. 685; State v. Concelia, 250 Mo. 425.

WILLIAMS, J.—Upon an information charging him with the larceny of one black cow, the property of one C. G. Awbrey, defendant was tried in the circuit court of Taney County, found guilty, and his punishment assessed at two years' imprisonment in the penitentiary. Defendant has duly perfected an appeal.

The crime was alleged to have occurred on the 23rd day of August, 1915.

Upon the part of the State the evidence tends to establish the following facts:

Prosecuting witness Awbrey lived on a farm about one mile northwest of Protem, Taney County, Missouri, and owned a black cow and a heifer, which were running out on the range about two and one-half miles from Awbrey's home and about four miles north of the Arkansas State line. The black cow weighed about one thou-

sand pounds, wore a bell, and is described by Awbrey as follows:

"She was a black cow; and had white on her belly and white on her flank and her right front foot was white; that is all the white there was about her."

About the last of July or the first of August, 1915, the heifer "came up" without the cow and the owner never saw the black cow after that date. Several cattle ran on this range. The extent of the range is not given. The owner made a search, but was unable to find the cow. A road leading from the neighborhood in which Awbrey lived went in a westerly direction about four miles, passing the farm of one Bud Ellison, and there turned in a more northerly direction toward the farm of Lee Jenkins. The Jenkins farm was four or five miles north of the Bud Ellison farm.

One Sunday night in 1915 and about threshing time, Bud Ellison heard a strange cow bell in the road which passed his house. He did not see the cow which wore the bell, nor did he see any one driving cattle, because it was too dark. He testified, however, that Awbrey's cattle were not in the habit of running around his place.

In November of 1915, C. B. Wood and his son were going along the road which runs from the Bud Ellison farm to the Lee Jenkins farm, and at a point about one mile south of the Lee Jenkins farm the boy discovered a cow bell at the edge of the road. The bell had a small piece of leather strap attached, which had the appearance of having been gnawed by rats. The bell was filled with decayed grass, etc., which had the appearance of having been stuffed into the bell. They took the bell home with them, and a few months later Awbrey having heard of the incident called at the Wood home and after describing the bell which was formerly on his cow, which tallied with the description of the bell, was given possession of the bell. This bell was introduced in evidence at the trial and was identified by Awbrey as the bell which was worn by his black cow at the time of her disappearance from the range.

One Monday morning in July or August, 1915, the defendant and another man, unknown to the witness, came to the farm of Lee Jenkins driving two cows, one black and one red, and asked Jenkins if he could get a place in which to put his cows. Jenkins told defendant to put them in a lot, but defendant said that he would prefer a pasture. Jenkins then told defendant to put them in a near-by alfalfa field. Jenkins in describing the cow testified that she would weigh between nine hundred or one thousand pounds; that "she was a black cow; I remember she had a little white on both hind feet and she was black from the top to the brisket." On being further examined as to the white upon the cow he said: "I don't remember; I remember noticing some white on her feet." On cross-examination this witness testified as follows:

"Q. Which of her feet were white? A. Each one of her hind feet.

"Q. You did not notice any white except upon her hind feet? A. Not that I noticed of any more."

After placing the two cows in the alfalfa field, defendant went to a neighboring ranch to get another cow which he claimed belonged to him, and after returning with the other cow defendant and his helper drove the three cows to "Bud Sheralds." The witness Jenkins had some cattle which he also on that day took over to Sheralds's. After the cattle were driven to Sheralds's defendant sold his three cows to a man by the name of Brown Morrison from Illinois. Jenkins knew that defendant was coming with the cattle, because the defendant had told Jenkins on the Saturday before that he was going to drive some cattle up to his place on the next Monday morning and that they would drive their cattle together over to Sheralds's. Defendant did not tell Jenkins from what place he was going to bring the cattle, but the witness presumed he was going to bring them from home. The witness also testified that the black cow did not have any bell on her when defendant drove her up to his farm on that day.

A few weeks after the cow disappeared a warrant was issued for the arrest of the defendant. The next day after the warrant was issued defendant went to Awbrey's house, told Awbrey that he did not think Awbrey had done him right, and that Awbrey "didn't get the right fellow." He further told Awbrey that he had bought the cow from a man named Sissom down at the "Chigre School House neighborhood in Arkansas." Defendant also told Awbrey that the cow he was driving did not have a bell, but that while he was driving the cow on the night in question an old roan cow wearing a bell followed them some distance near the home of Bud Ellison until he separated the roan cow from his cows and started the roan cow in an opposite direction. Defendant told Awbrey that he could prove where he bought the cow by one Abner Pemberton and Richard Mullinax, and that Mullinax helped him drive the cow that night.

Charley Ayers, the constable, testified that after the warrant for defendant's arrest was delivered to him he was unable to find the defendant, that he went to the home of defendant's father and inquired and was told that defendant was at another place. The constable left word for defendant to meet him at Protem. The constable heard that afterwards the defendant came to Protem that same day, but did not stay. A few days later the constable heard that defendant was leaving the country and followed him as far as Bradleyville, but upon arriving at Bradleyville learned that defendant had taken the hack and departed.

Upon the part of the defense the evidence tends to establish the following facts:

Defendant testifying in his own behalf stated that he was twenty-two years old, and that in the summer of 1915 was engaged in farming and buying and selling stock on a small scale. That during that summer he bought a "black" cow and a red one from Albert Sissom, who lived near the Chigre Hill School House in Marion County, Arkansas. That no one was present when he made the purchase, but just after the defendant paid for

the cattle one Harry Long rode up, and Sissom said: "Fred [meaning the defendant], do not say anything about buying them cattle for a few days; I owe some fellows and I want to leave and work, and I will be back and pay them." Defendant told him that was all right with him. On cross-examination defendant testified he never asked Sissom where he got the cows. The defendant and Long started down the road and met Albert Pemberton, and defendant told him that he had bought some cows and pointed them out to Pemberton. While the three were looking at the cows Sissom came up from the brush and said, "Nave, I thought you was not going to say anything about me selling those cattle?" and defendant replied, "I haven't," and Sissom said, "That is all right." Defendant tried to engage Long to help him drive the cattle out. He testified that Chigre Hill School House was about three and one-half or four miles from the home of Awbrey. In specifically describing the cow the defendant said: "As I said awhile ago, I think she weighed 920 pounds, and she had some white on her; she was a tolerable heavy cow; she was heavy made from the shoulders down. I would judge her to be about seven or eight years old." He further testified that the cow did not have any bell on. After buying the cattle defendant said he permitted them to remain where they were for about a week and he found a man who was willing to purchase them if he could get them over to Bud Sheralds's. He employed Richard Mullinax to help drive the two cows over there. Mullinax told defendant that he could not help him drive the cattle until after he had called upon his girl on the Sunday in question. The defendant thought it would be better on account of the hot weather to drive the cows at night, anyhow, and he also went to see his girl. It was about sundown Sunday before they started out with the cattle. They drove them through by Bud Ellison's, and they had considerable trouble along the road with other cattle "crowding in," which they would have to drive back. At one place he says there were fifteen or twenty head of cattle following them, among which there was an old roan cow wearing

a bell. He then tells about reaching the home of Jenkins about daybreak. There he left the cows in an alfalfa pasture. Later in the day he drove the cows over to Sheralds's, and there on that day sold them to Mr. Morrison, who gave him a check on the Bank of Ramsey, Illinois. Two or three weeks later defendant heard that Awbrey had lost a cow, and some one told defendant that a warrant was out for his arrest upon this charge. The next morning defendant went to Awbrey's home and told him that he had bought this cow from Sissom and that he would rather that he would take the matter up with Sissom. When the defendant returned to his father's house that day he was told that a constable had been there with a warrant. Defendant then went to Protem inquiring for the constable and was told that he was gone, and the defendant left word for the constable that he would be at home the next morning and that he lived about one mile and a quarter from Protem, and remained at home the next three days. About a week after that defendant met one Roy Davis who told defendant that he heard that they were going to have defendant arrested for "carrying a gun," and advised defendant "to get up and get out." Defendant said he was needing work, which fact together with the advice from Davis, caused him to go to Oklahoma. Defendant also admitted that before he left for Oklahoma he knew that the Constable had a warrant for his arrest, upon the charge of having stolen Awbrey's cow.

After remaining in Oklahoma a short time he went to Columbus, Kansas, remaining there two months, and then went to Iola, Kansas, where after remaining a month, he went to Branson, Missouri, and there learned that the grand jury had indicted him for stealing a cow; he thereupon went to Forsythe, Missouri, and gave bond. Afterwards he returned to Collinsville, Oklahoma, and remained there most of the time thereafter, except for a period of about two months. He stated that Richard Mullinax now lived in Rush, Arkansas, and he was unable to procure his attendance at the trial. He further testified that it was about fifteen miles from Chigre Hill

School House in Arkansas to the farm òf Lee Jenkins in Taney County, Missouri.

Defendant also admitted upon cross-examination that in 1915 in the circuit court of Taney County he was convicted of selling liquor in violation of the law, and that in 1911 in said circuit court he was convicted of burglary and larceny.

Harry Long testified that he met defendant near the Chigre Hill School House at the time in question, and defendant told him that he had bought some cattle from Sissom and wanted the witness to help drive them out. Witness said that there was a dark looking cow there, but that he did not pay much attention. Two other witnesses saw defendant going towards the Chigre Hill School House about the time in question.

Albert Pemberton, by deposition, testified that on July 16, 1915, he saw defendant near the Chigre Hill School House and that defendant pointed out to him and witness Long two cows which he claimed he had bought, one of the cows was red and the other was "a large black and white spotted one;" that while they were looking at the cows Sissom came out and told defendant that he did not mean for him to tell about him selling those cattle for a few days, and said, "Fred, you said you would not tell about me selling you these cows for a few days?" and defendant replied, "I haven't said anything to any one about it yet." After this conversation the witness, together with defendant and Harry Long, went to Protem, the defendant leaving the cows on the range near the place of purchase.

In rebuttal, Emerson Rozell, testifying for the State, said that in 1915 he lived near the Chigre Hill School House in Arkansas, within a quarter of a mile of Albert Sissom; that he was well acquainted with Sissom, but did not know that Sissom owned any cattle; that he (witness) supplied Sissom with milk that year. On cross-examination the witness said he never heard Sissom claim that he owned any cattle, but that "he might have had some hid out in the brush, on the range."

I. Appellant insists that the evidence is insufficient to support the verdict, and that the court erred in overruling his demurrer to the evidence, offered at the close of the case.

Cases involving the question of the larceny of stock from the range ofttimes present questions difficult of solution. One of the recent cases which presented a troublesome question of this kind was the

Sufficiency of Evidence.

case of State v. Lee, 182 S. W. 972, in which it was held by the Court in Banc that the evidence was not sufficient.

After a very careful consideration of the evidence in this case we have reached the conclusion that it contains sufficient additional evidence to distinguish it from the Lee case, and that the evidence is sufficient to make the question of guilt one for the jury's determination. The fact that the cow was driven at night a distance of ten or twelve miles, and the next day sold and shipped away, and the further fact that defendant left the State at a time when he knew that he stood charged with the crime and that a warrant was out for his arrest are facts sufficient within themselves to distinguish this case from the Lee case, and when those facts are considered in the light of the whole evidence we think the evidence sufficient to make a case for the jury.

The main point urged by appellant in behalf of his contention that the demurrer should have been sustained is that the evidence wholly fails to show that the cow driven away at night by defendant was in fact the cow alleged to have been stolen. We think the evidence in this regard was sufficient to warrant the jury in finding that the cow taken by defendant was the one charged to have been stolen. The owner of the cow described his cow as follows:

"She was a black cow, weighing one thousand pounds, wore a bell, and had white on her belly and white on her flank and her *right front foot* was white."

Defendant described the cow which he drove away on the night in question as a black cow and further said:

"As I said awhile ago, I think she weighed 920 pounds, and she had some white on her."

It is true that one of the State's witnesses, after testifying that the cow which defendant had in his possession was a black cow weighing nine hundred or a thousand pounds, further stated that "she had a little white on both *hind feet*. Yet on cross-examination concerning the white on the cow he said: "I don't remember; I remember noticing some white on her feet."

It will be recalled that the bell which was worn by the cow belonging to the prosecuting witness prior to her disappearance from the range was later found along the road over which defendant drove the cow on the night in question and at a point six or eight miles north of the range upon which the stolen cow was located prior to her disappearance. We think the evidence considered as a whole, was sufficient to make the question of the identity of cow one for the jury.

II. It is contended that the court erred in giving instruction numbered 8. This instruction informed the jury of the presumption arising from the recent exclusive and unexplained possession of stolen property.

The instruction given follows substantially (so far as the present facts justify) the form approved in the case of State v. Good, 132 Mo. 114, l. c. 125.

The purpose of an instruction upon this question of law is to aid the jury in identifying the thief when it has first been found by the jury that a theft has in fact occurred. [State v. Warden, 94 Mo. l. c. 651; State v. Lee, supra.] In the cases cited the giving of an instruction on this subject was held to be erroneous because in each of those cases it stood admitted that the defendant was the taker (the only issue there presented being whether the taking was or was not felonious), hence the instruction in those cases was unnecessary and apt to be misleading.

In the case at bar, however, defendant does not admit nor does it stand conceded that defendant is the person who took the cow from the possession of the prosecuting witness. The person who took the cow from the range, where the prosecuting witness had placed her, was the felonious taker. There is no direct evidence as to who that person was. The identity of the felonious taker was therefore an issue in the case, and as a permissible aid to the jury in solving this question the instruction was proper.

Other instructions appear to be in proper form and we find no error in the case. The judgment is affirmed.

All concur.